UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **CRIMINAL COMPLAINT** |
| v. | : | Case No. 05-4058 |
| LUISA MEDRANO | : | |

I, JASON WILKES, being duly sworn, state the following is true and correct to the best of my knowledge and belief. From at least as early as May 2003 through in or about January 2005, in the District of New Jersey, and elsewhere, defendant LUISA MEDRANO did:

SEE ATTACHMENT A

Contrary to Title 8, United States Code, Section 1324 (a)(1)(A)(iii), in violation of Title 8, United States Code, Section 1324 (a)(1)(A)(v)(I).

I further state that I am a Special Agent of U.S. Immigration & Customs Enforcement, and that this complaint is based on the following facts:

SEE ATTACHMENT B

Continued on the attached pages and made a part hereof.

Jason Wilkes, Special Agent
Department of Homeland Security,
U.S. Immigration & Customs Enforcement

Sworn to before me and subscribed in my presence,

July 18, 2005, at Newark, New Jersey

HON. G. DONALD HANEKE
U. S. MAGISTRATE JUDGE

Signature of Judicial Officer

## ATTACHMENT A

From at least as early as in or about May 2003 and continuing until at least as late as in or about January 2005, in Hudson County, in the District of New Jersey, defendant

## LUISA MEDRANO

did knowingly and willfully conspire and agree with others to, knowingly and in reckless disregard of the fact that an alien had come to, entered, and remained in the United States in violation of law, conceal, harbor, and shield from detection, such alien in any place, including any building or any means of transportation for the purpose of commercial advantage and private financial gain, contrary to Title 8, United States Code, Section 1324(a)(1)(A)(iii), in violation of Title 8, United States Code, Section 1324(a)(1)(A)(v)(I).

## ATTACHMENT B

I, Jason Wilkes, a Special Agent with the Department of Homeland Security, United States Immigration and Customs Enforcement (hereinafter "ICE") , having conducted an investigation and having spoken with other individuals, have knowledge of the following facts:

1. In or about January 2005, ICE commenced an investigation into whether certain Honduran females, some of whom were juveniles, were being smuggled into the United States and coerced into working in several bars in the Union City, New Jersey area.

2. On January 11, 2005, investigators located and interviewed a confidential source (hereinafter "CI-1") who stated, in substance and in part, that she worked as an employee of a bar in Union City. CI-1 stated that her job had been to drink with patrons and to encourage them to buy drinks. CI-1 stated that the women employed at the bar were encouraged to solicit the patrons for acts of prostitution. CI-1 further stated that once in the United States, the smuggled women, were forced to work at one of several bars until a smuggling fee, which was typically either $15,000 or $20,000, was paid in full.

3. On January 13, 2005, ICE agents interviewed another confidential source (hereinafter "CI-2"). CI-2 is a national and citizen of Honduras. CI-2 stated that approximately four months earlier, he had visited "El Paisano Bar and Night Club" (hereinafter"El Paisano"), which is located at 509 22nd Street, in Union City, New Jersey. While there, he was approached by his cousin, a Honduran female, who is fourteen years of age. CI-2 stated that he was not aware that his cousin was in the United States until encountering her at "El Paisano" on that date. She told him that she had been smuggled into the United States with the promise of employment in a restaurant and brought to Union City, NJ where she had been forced to work at El Paisano until her smuggling fee was paid. CI-1 stated that his cousin had told him that a woman at the house, (hereinafter "Co-conspirator 1") restricted her movement to travel between El Paisano and 2604 New York Avenue, Union City, New Jersey (hereinafter "2604 New York Avenue") where she and several other young girls who worked in El Paisano lived.

4. On or about January 15, 2005, CI-2 stated that he had visited "El Paisano" and spoken with Co-conspirator-1 to inquire whether he could take his cousin out to lunch. Co-conspirator-1 told CI-2 that his cousin could not leave and was only allowed to travel to and from work until her smuggling fee was paid in full.

5. On January 19, 2005, an undercover agent (hereinafter referred to as the "UCA") went to El Paisano. Once inside El Paisano, the UCA observed between twenty and twenty-five Hispanic females in the bar. The UCA engaged one of the females in conversation. The female told the UCA that she was from Honduras and had lived in the United States for about two years. The female told the UCA that she worked at the bar from six o'clock in the afternoon until two o'clock in the morning. When the UCA asked the female if he could see her away from the bar, she replied "they won't let us." Later in the conversation, the UCA asked the female again if he could see her away from the bar. The female replied that it might be possible if the UCA patronized the Bar more frequently.

6. On January 20, 2005, ICE agents executed search warrants at 2604 New York Avenue and 509 22nd Street, Union City, New Jersey. During the execution of the warrant, twelve females were found living at 2604 New York Avenue, and seven females were found living at 509 22nd Street, Union City, New Jersey. All of the females were determined to be undocumented aliens from Honduras and were taken into ICE custody.

7. Since January 20, 2005, ICE agents have continued the investigation. Agents have determined that in addition to 2604 New York Avenue and 509 22nd Street, Union City, New Jersey, young Honduran females were being housed at 75 68th Street, Guttenberg, New Jersey. (collectively "the Apartments"). While living at those locations, all of the Honduran females were forced to work in "El Paisano Bar," "El Puerto de la Union I" or "El Puerto de la Union II," (collectively "the Bars"), until their smuggling debts had been paid in full. At all times relevant to this complaint, multiple Honduran females who had been smuggled into the United States illegally, some of whom were juveniles, were housed at the Apartments and employed at the Bars, which were owned and controlled by defendant LUISA MEDRANO.

8. In or about February 2005, law enforcement agents interviewed S.R.R., who is a 16-year old juvenile. S.R.R. stated in substance and in part, that: 1) on or about May 15, 2003, defendant LUISA MEDRANO provided employment for S.R.R. at one of the bars and 2) that on or about January 20, 2005, upon learning of the search warrants executed at two of the Apartments and apprehension of approximately 19 undocumented Honduran females, defendant LUISA MEDRANO provided temporary shelter for S.R.R. and others. Defendant LUISA MEDRANO provided S.R.R. with $100 and another co-conspirator with $1,000 and instructed both to leave New Jersey to avoid apprehension by U.S. Immigration authorities.